UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREDRICK LUDWIG,<br><br>　　　　　　　Plaintiff,<br>　v.<br>ISIDRO BACA, et al.,<br><br>　　　　　　　Defendants. | Case No. 3:13-cv-00070-MMD-VPC<br><br>ORDER |

This habeas matter under 28 U.S.C. § 2254 comes before the Court on petitioner's counseled response to the Court's order to show cause as to why the petition should not be dismissed as time-barred (dkt. no. 11). Respondents then filed their response (dkt. no. 15), and petitioner filed a counseled reply (dkt. no. 17). As discussed below, this petition must be dismissed as untimely.

I.　**BACKGROUND**

On March 31, 2006, petitioner Frederick Ludwig pleaded guilty to one count of lewdness with a child under age fourteen (exhibits to respondents' response to show-cause order, dkt. no. 15, Exh. 2). The state district court sentenced him to a term of life with the possibility of parole after ten (10) years, and the judgment of conviction was filed on May 26, 2006. (Exhs. 4, 5.)

Ludwig did not file a direct appeal. On March 17, 2009, he filed a state postconviction petition for a writ of habeas corpus. (Exh. 9.) On March 10, 2010, the Nevada Supreme Court affirmed the dismissal of the petition as time-barred. (Exh. 15.) Ludwig filed a second state postconviction petition on February 1, 2012, and the

Nevada Supreme Court affirmed the dismissal of the second petition on January 16, 2013. (Exhs. 17, 20.)

Petitioner dispatched his federal petition for filing on or about February 6, 2013. (Dkt. no. 2.) After this Court issued the show-cause order, petitioner retained counsel. (Dkt. nos. 5, 9.) In his counseled response, Ludwig asserts that he is actually innocent and appears to also argue that he is entitled to equitable tolling due to mental incapacity. (Dkt. no. 11.)

## II. LEGAL STANDARDS

### A. Antiterrorism and Effective Death Penalty Act Statute of Limitations

The Antiterrorism and Effective Death Penalty Act (AEDPA) went into effect on April 24, 1996, and imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). Further, a properly filed petition for state postconviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2).

### B. Equitable Tolling

A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his right diligently, and that (2) some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2009)(quoting prior authority). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He or she accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of the filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). Ignorance of the one-

year statute of limitations does not constitute an extraordinary circumstance that prevents a prisoner from making a timely filing. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

With respect to equitable tolling due to mental impairment, the Ninth Circuit has set forth a two-part test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable to personally prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent that he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance . . . .

*Bills v. Clark*, 628 F.3d at 1099-1100 (9th Cir. 2010) (emphasis in original)(footnotes omitted); *see also id*. at 1100-01.

**C.    Actual Innocence**

A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." 133 S.Ct. 1924, 1928 (2013). The Court emphasized that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.*, quoting *Schlup*, 513 U.S., at 329; *see House*, 547 U.S. at 538 (emphasizing

that the *Schlup* standard is "demanding" and seldom met). In assessing a *Schlup* gateway claim, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S. at 332; *McQuiggin*, 133 S.Ct. at 1936 ("[f]ocusing on the merits of a petitioner's actual-innocence claim and taking account of delay in that context, rather than treating timeliness as a threshold inquiry, is tuned to the rationale underlying the miscarriage of justice exception — i.e., ensuring that federal constitutional errors do not result in the incarceration of innocent persons" (internal quotations and citations omitted).

## III.  INSTANT ACTION

In the single ground of his federal petition, Ludwig claims that he is actually innocent but his counsel rendered ineffective assistance in violation of his Fifth, Sixth and Fourteenth Amendment rights by failing to procure "expert medical evidence" that petitioner is and was impotent and by threatening Ludwig that he faced four sentences of twenty years to life. (Dkt. no. 2 at 3-5.) He claims he was old, under the influence of prescription drugs and "scared to death" by his counsel's threats, and therefore he signed the guilty plea agreement without even reading it. (*Id.*)

Ludwig's judgment of conviction was filed on May 24, 2006. Ludwig did not file a direct appeal, and the AEDPA one-year limitation period expired on or about June 25, 2007. Ludwig filed a motion to withdraw public defender and motion to transfer records on March 14, 2007. (Exh. 6.) Petitioner did not file his first state postconviction petition until March 17, 2009. (Exh. 9.)

In his counseled response to the show-cause order, Ludwig contends that (1) he lacked competence to plead guilty; (2) his court-appointed attorney in state district court rendered ineffective assistance; and (3) he is actually innocent. (Dkt. no. 11 at 6.) His counsel also requested additional time to respond to the show-cause order, asserting that he needed to marshal medical records, state court transcripts, and client files. (*Id.* at 18-21.) Petitioner further requested the issuance of subpoenas *duces tecum* to the Las Vegas Metropolitan Police Department, Northern Nevada Correctional Center,

Urology Associates of NENY, Clark County Detention Center, and the Clark County Public Defender compelling the release of, *inter alia*, blood samples, arrest and witness reports and medical records. (*Id.* at 21-23.) Counsel asserted that he needed time to inspect medical records because Ludwig's "mental condition was (and may continue to be) largely compromised by the numerous medications he claims were prescribed for him, his frail health, physical limitations (eye sight, etc.), old age . . . ." (*Id.* at 8.)

Respondents then filed their response to the show-cause order. (Dkt. no. 15.) They argue that Ludwig has failed to demonstrate actual innocence or that he is entitled to equitable tolling.

Subsequently, on July 9, 2015, Ludwig, through counsel, filed a reply to the show-cause order. (Dkt. no. 17.) Counsel explains that he has obtained virtually all of the materials for which he sought subpoenas in his response to the show-cause order, has conducted further investigation, and has re-interviewed Ludwig. (*Id.* at 1.) Counsel now informs the Court that, while Ludwig has maintained that he was in a drug-induced haze at the time he pleaded guilty, Ludwig has never claimed that he was mentally incompetent once he was transferred to the prison system. Counsel states that in his experience with Ludwig he has never had reason to question his competency. Counsel reviewed medical records starting from the time petitioner was arrested and booked into Clark County Detention Center and now states that nothing in those records raises any concern that Ludwig was incompetent at the time he pleaded guilty or anytime thereafter. (*Id.* at 3.)

Counsel also followed up on petitioner's argument that expert medical evidence from his New York urologist supports his actual innocence claim of erectile dysfunction. Ludwig's counsel now reports that the records show no such diagnosis, and, in fact, a note from that office in 1996 indicates that Ludwig "denies erectile problems." (*Id.* at 4.) Counsel points out that Ludwig continues to adamantly maintain his innocence but explains that he has been unable to marshal further evidence to support either Ludwig's

///

actual innocence claim or to toll the statute of limitations. (*Id.* at 6-7.) Counsel states that he will provide an affidavit and any medical records if ordered by this Court. (*Id.* at 6.)

Unsurprisingly, Ludwig filed a motion for withdrawal of attorney of record and transfer of records on August 27, 2015. (Dkt. no. 18.) He filed what he styled as a judicial notice formal complaint against his counsel (dkt. no. 20) and a copy of a document that he titled formal complaint against his counsel that he apparently has sent to the American Bar Association, the Nevada and California State Bars, and the National Bar Association. (Dkt. no. 21.) Ludwig's counsel filed a response that also asks the Court to enter an order granting the motion to withdraw as attorney. (Dkt. no. 22.) Counsel attached exhibits, including documentation that counsel has provided Ludwig with his file.

The Court has reviewed the briefing and exhibits and agrees with counsel for Ludwig that no further briefing is required. Nothing in the record reflects that petitioner has any mental impairments or was incompetent to enter his guilty plea. Ludwig — through counsel or *pro se* — has not even argued that he was unable to rationally or factually understand the need to timely file, or unable to personally prepare and file a habeas petition and that such lack of competence caused it to be impossible for him to meet the filing deadline.

Ludwig signed the guilty plea agreement, which set forth his appeal rights. (Exh. 2.) Nothing in the hearing transcript suggests that Ludwig was incompetent at the time he entered his plea. (Exh. 3.) In response to the court's canvass, Ludwig indicates that he freely and voluntarily pled guilty to one count of lewdness with a child under the age of fourteen and that he was in fact guilty. He stated that he understood the guilty plea agreement, he had discussed it with his attorney, no one threatened him, and he understood that he was giving up important constitutional rights. (*Id.*)

Further, the Court considers petitioner's contentions of mental incompetency in conjunction with his *pro se* filings in state court and in these federal habeas

6

proceedings. Ludwig's first state postconviction petition, filed almost two years after the expiration of the time to file a direct appeal, is clear, organized and sets forth cogent argument. (Exh. 9.) He claimed his plea was not entered voluntarily and knowingly due to the medication he was taking at the time he entered his plea. (*Id.* at 11.) In affirming the dismissal of the petition as untimely, the Nevada Supreme Court concluded that petitioner failed to demonstrate any impediment external to the defense prevented him from timely filing his claims. (Exh. 15.)

Ludwig's second *pro se* state postconviction petition is also organized and cogent. (Exh. 17.) In affirming the dismissal of the petition as untimely, the Nevada Supreme Court rejected petitioner's argument that he was tricked into believing he had retained an attorney to file a direct appeal, but that she failed to file anything. The state supreme court noted that not only was this not an impediment external to the defense, but that Ludwig claimed to have learned in November 2008 that no direct appeal had been filed but waited more than three (3) years to raise the issue in this second state postconviction petition. The court also rejected that a *Brady* claim regarding the alleged withholding of impeachment evidence that the victim's mother was arrested in 2005 for burglary and larceny could provide a basis to excuse his procedural default. Finally, the court concluded that Ludwig's actual innocence claim failed because he failed to show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. In sum, Ludwig's *pro se* filings in state and federal court, viewed together with his counsel's statements now that he has conducted further investigation — including review of Ludwig's medical records — provide no basis for Ludwig to claim mental incapacity so as to warrant equitable tolling of the AEDPA statute of limitations.

With respect to Ludwig's claim of actual innocence, the Court notes that it is not clear that the actual innocence gateway applies to a case such as this involving a guilty plea. *See Smith v. Baldwin*, 510 F.3d 1127, 1140 no. 9 (9th Cir.2007) ("We are aware of the potential incongruity between the purpose of the actual innocence gateway announced in *Schlup* and its application to cases involving guilty (or no contest)

pleas."). In any event, the Court concludes that petitioner's gateway claim of actual innocence is meritless.

Ludwig claimed in his response that he suffered from erectile dysfunction and thus was unable to commit the charged crimes. (Dkt. no. 2 at 3.) However, as respondents point out and as Ludwig's counsel acknowledges in the reply, Ludwig pled guilty to lewdness with a child under the age of fourteen by fondling the breasts and genital area of his daughter. (Exh. 2.) Even assuming that Ludwig was impotent, that provides no support whatsoever for an actual innocence claim here.

In conclusion, petitioner's federal petition is untimely. Petitioner has failed to demonstrate any basis for equitable tolling or to excuse the statute of limitations. Because the federal habeas petition was untimely filed, and because petitioner is not entitled to statutory or equitable tolling, this action must be dismissed.

Ludwig's motion for withdrawal of attorney of record is granted. However, this Court has carefully reviewed the briefing on the show-cause order and the exhibits and concludes that Ludwig's equitable tolling and actual innocence claims are utterly meritless. Accordingly, the Court denies Ludwig's motion for an extension of time to file a *pro se* response to the show-cause order.

## IV.   CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-51 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.*; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could

8

resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* Pursuant to Rule 11(a) of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet the standard. The Court will therefore deny petitioner a certificate of appealability.

V.   **CONCLUSION**

It is therefore ordered that the petition (dkt. no. 2) is dismissed with prejudice as untimely.

It is further ordered that a certificate of appealability is denied.

It is further ordered that petitioner's motion for withdrawal of attorney of record (dkt. no. 18) is granted.

It is further ordered that respondents' motion to extend time to file their response (dkt. no. 14) is granted *nunc pro tunc*.

It is further ordered that petitioner's motion for extension of time to file a *pro se* response to the show-cause order (dkt. no. 19) is denied.

It is further ordered that the Clerk shall enter judgment accordingly and close this case.

DATED THIS 28th day of October 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE